IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THOMAS LEE DOTY

        Plaintiff,

v.                                                                                                                     Civil Action No. 3:16-CV-37

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

## REPORT AND RECOMMENDATION

**I.    SUMMARY**

The Plaintiff advances two arguments. First, the Administrative Law Judge ("ALJ") improperly discredited the Plaintiff's testimony without discussing relevant medical evidence. The Plaintiff highlights select portions of the decision and argues that the analysis is not supported by citations to evidence. The Court is unpersuaded by this argument. While these select portions taken in isolation appear to be lacking, when taken as a whole, it is apparent that the ALJ's decision extensively discusses the medical evidence. Second, the Plaintiff argues that the ALJ improperly concluded that the Plaintiff's severe impairments did not meet the agency's Listings of disabilities. The Court is persuaded by this argument. Indeed, the ALJ merely asserted that the Plaintiff did not meet the Listings with no explanation as to why. Therefore, the Court recommends that the case be remanded.

**II.    PROCEDURAL HISTORY**

In 2010, the Plaintiff, Thomas Doty, filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). R. 12. These claims were denied in April 2012 and no appeal was filed. R. 12.

However, on May 15, 2012, the Plaintiff filed another application for DIB and SSI. R. 12. In the second application the Plaintiff alleged a disability beginning on December 17, 2008. R. 12. The Plaintiff's claims were denied initially on August 1, 2012 and upon reconsideration on April 5, 2013. R. 12. Thereafter, the Plaintiff requested a hearing. R. 12. The Plaintiff, represented by counsel, appeared and testified at a hearing held on September 29, 2016. R. 16. Larry Ostrowski, Ph. D., an impartial Vocational Expert ("VE"), also appeared and testified at the hearing. R. 12. On October 29, 2014, the ALJ issued an unfavorable decision to the Plaintiff. R. 9. The Appeals Council denied review. R. 1.

On April 5, 2016, the Plaintiff filed a complaint in this Court to obtain judicial review of the final decision of the Commissioner of Social Security denying his claims for DIB and SSI. ECF No. 1.

## III. THE ALJ'S FINDINGS

In determining whether the Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520; 416.920. The first step in the process is determining whether a claimant is currently engaged in substantial gainful activity. *Id.* §§ 404.1520(b); 416.920(b). If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. *Id.* §§ 404.1520(c); 416.920(c). If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* §§ 404.1520(d); 416.920(d). If an impairment meets or equals a listed impairment, the claimant is

disabled. *Id.* §§ 404.1520(d); 416.920(d). However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of her impairments. *Id.* §§ 404.1520(e); 416.920(e).

After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of her past relevant work. *Id.* §§ 404.1520(f); 416.920(f). If the claimant does not have the RFC to do her past relevant work, then she has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experiences. *Id.* §§ 404.1520(g); 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983).

At step one of the sequential process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since May 15, 2012, the alleged onset date. R. 14. At step two, the ALJ found that the Plaintiff had the following severe impairments:

> [F]usion of right radial carpal of right wrist status post right carpel tunnel release; osteoarthritis of the left knee; chronic obstructive pulmonary disease; right transverse process fracture of the L1; degenerative disc disease of the cervical spine; headaches; sleep apnea; hearing loss; mood disorder associated with chronic pain/major depressive disorder; posttraumatic stress disorder; and alcohol/opioid dependence in reported remission.

R. 14. At the third step, the ALJ found that none of the Plaintiff's impairments met or medically equaled the severity of one of the listed impairments contained in the Listings. R. 15. The ALJ then determined that the Plaintiff had following RFC:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) that: requires no climbing ladders, ropes or scaffolds or more than occasionally climbing ramps or stairs, balancing, stooping, crouching, kneeling, or crawling;

> accommodates the use of a right wrist and knee and left knee brace; requires no more than occasional fingering, handling and feeling with the right upper extremity; requires no overhead reaching bilaterally; avoids concentrated exposure to extreme cold, excessive noise, excessive vibration, irritants such as fumes, odors, dust and gases; avoids all exposure to any hazards such as dangerous moving machinery and unprotected heights; is limited to a low stress job defined as having only occasional decision making required, occasional changes in the work setting and no strict production quotas; involves no interaction with the general public, and no more than occasional interaction with co-workers and supervisors.

R. 16. At step four, the ALJ determined that the Plaintiff was unable to perform any past relevant work. R. 20. At step five, the ALJ determined that, "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." R. 21. Thus, the ALJ found that the Plaintiff was not disabled.

## IV. LEGAL STANDARDS

### A. Summary Judgment[1]

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere

---

[1] The Plaintiff's [ECF No. 11] Motion is styled as a motion for judgment on the pleadings. The Court, however, construes this as a motion for summary judgment. Indeed, the Plaintiff's motion relies on extrinsic evidence which is inconsistent with a motion for judgment on the pleadings but rather is consistent with a motion for summary judgment. Moreover, Local Rule of Civil Procedure 9.02(c) requires the parties to a social security appeal to file motions for summary judgment and not motions for judgment on the pleadings.

allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### B. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g);1383(c)(3). The ALJ's decision must be upheld if it is supported by substantial evidence. *Id.* §§ 405(g); 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)).

An ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Walls v. Barnhart*, 296 F. 3d 287, 290 (4th Cir. 2002) (quoting 42 U.S.C. § 405(g)). Moreover, judicial review "of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Id.* (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985)). In reviewing the case to determine whether substantial evidence exists, this Court should not "undertake to re-weigh conflicting evidence,

make credibility determinations, or substitute [its] judgment for that of" the agency. *Id. (quoting Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)).

## V.     DISCUSSION

The Plaintiff advances two arguments.  First, the ALJ improperly discredited the Plaintiff's testimony in a conclusory manner without discussing the medical evidence.  The Court is unpersuaded by this argument because the ALJ adequately discussed the medical evidence.  Second, the Plaintiff argues that the ALJ performed an inadequate step-three inquiry by failing to explain why the Plaintiff's impairments did not equal any of the Listings.  The Court is persuaded by this argument because the ALJ merely asserted in a conclusory manner that the Listings were not met.  Therefore, the Court recommends that the case be remanded.

### A.     **The ALJ Made a Proper Credibility Determination**

The Plaintiff argues that the ALJ erred by discrediting the Plaintiff's claims as to the intensity, persistence, and limiting effects of his symptoms.  In making a credibility determination, the ALJ must follow a two-step analysis.  "First, there must be objective medical evidence showing the existence of a medical impairment." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).  Second, the ALJ must consider "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." *Id.* at 595.

The ALJ here followed this two-step analysis.  At step one, the ALJ determined that "the [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."  R. 17.  Thus, the ALJ proceeded to step two and determined that "the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . . ."  R. 17.

The Plaintiff argues that the ALJ's step-two analysis was flawed for two reasons. First, the Plaintiff argues that the ALJ failed to comply with Social Security Ruling ("SSR") 97-6p. SSR 97-6p provides that:

> [T]he adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

The Plaintiff argues that the ALJ here failed to consider these factors and applied a conclusory analysis. The Court is unpersuaded by the Plaintiff's argument because "[t]here is no requirement that [the ALJ] state specific findings as to each factor" as the Plaintiff suggests. *Wolfe v. Colvin*, No. 3:14-CV-4, 2015 WL 401013, at *4 (N.D.W. Va. Jan. 28, 2015).

Second, the Plaintiff's argues that the ALJ provided the same conclusory analysis as the ALJ in *Monroe v. Colvin*, 826 F.3d 176 (4th Cir. 2016). In *Monroe*, the court explained that, "the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at 189. The ALJ in *Monroe* discussed the

plaintiff's extensive medical history regarding sleep issues including sleep apnea and narcolepsy, however, the ALJ did not "indicate how any of the facts he cited show that Monroe did not lose consciousness two or three times daily or suffer extreme fatigue." *Id.* at 190. Thus, the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion that Monroe's testimony was not credible." *Id.* at 189 (citations omitted). Similarly, the Plaintiff here argues, "the ALJ did not indicate how any of the facts she cited show that the [Plaintiff] did not have the nonexertional symptoms he alleged." ECF No. 10 at 13 (citations omitted) (alterations omitted).

The Plaintiff provides two examples of where the ALJ failed to supply the required logical bridge:

> As discussed below, the claimant had a motor vehicle accident since the alleged onset date and has had physical therapy for back strains. However, the medical evidence supports that the claimant can still do a reduced range of sedentary exertional work activity, as discussed below. Additionally, the undersigned does not find the claimant to be fully credible as his conservative and limited treatment do not support his allegations of debilitating pain, and *the objective medical evidence does not support his allegations of debilitating functional limitation.* . . .
>
> Further, even in considering all his impairments and the objective evidence of these impairments, *his allegations of essentially no ability to do any activities of daily living appear inconsistent with the objective medical evidence* and tend to undermine his credibility as to the actual degree of limitations he experiences. . . .

ECF No. 12 (citing R. 18-19, 278-85, and 378) (emphasis Plaintiff's). Indeed, reading these selection portions in isolation it appears that the ALJ reached conclusions without explaining upon which medical evidence the she relied. However, these paragraphs are taken out of context. Indeed, just two pages before, the ALJ provided a web of conclusions, reasoning, and evidence. For example, the ALJ explained:

> Based on the medical evidence of record of the claimant's cervical impairment and his prior severe impairments, the undersigned finds that the claimant's allegations as to the intensity, duration, and limiting effects of these impairments are not entirely credible when viewed with the record as a whole. As discussed above, the record does not support any significant worsening of his prior severe

impairments, and no physician has opined that the claimant cannot work. While the claimant now has degenerative disc disease of the cervical spine, he has had little treatment. Further, he reported improvement in symptoms after physical therapy, and the record shows little complaints of any pain thereafter. In addition, he has not seen a specialist and has not had any emergency room visits or hospitalizations for pain, which indicates that his pain is relatively controlled with medication. Further, even in considering all his impairments and the objective evidence of these impairments, his allegations of essentially no ability to do any activities of daily living appear inconsistent with the objective medical evidence and tend to undermine his credibility as to the actual degree of limitation he experiences (Exhibits B7E and B9F/4). Accordingly, the undersigned finds that the medical evidence supports that the residual functional capacity fully accommodates all the claimant's impairments. While the claimant has alleged the need for a cane, the undersigned did not find any prescription for a cane and no evidence of the use of a cane in the medical record. Therefore, no cane was found to be warranted in the residual functional capacity.

Since the alleged onset date, the claimant has also alleged hearing loss and headaches. As to his allegations of headaches, the record shows some complaints in 2013 while attending therapy (Exhibits B10F, B11IF, B15F, and B19F). Imaging of the brain in January 2013 did show white matter that is sometimes consistent in people with a history of migraines headaches (Exhibit B11F/8). However, he reported improvement in his headaches by the end of physical therapy, and the record shows no additional complaints of a headache until December 2013 (Exhibit B10F/23 and Bl9F/3). Further, the claimant has not had any treatment or emergency room visits for headaches, he is not prescribed any medication, and the record shows no consultations with a specialist, which undermines his allegations as to the frequency and severity of his headaches (Exhibit B12E). Therefore, the undersigned finds that the medical evidence supports that any headaches are fully accommodated in the above residual functional capacity. As to the claimant's alleged hearing loss, the record shows some hearing loss (Exhibit Bl6F). However, the claimant's hearing at the consultative examination was normal and the claimant was able to hear appropriately at the hearing despite not wearing hearing aids (Exhibit B6F). Accordingly, the undersigned finds this impairment is fully accommodated in the residual functional capacity.

R. 16. Therefore, when read as a whole, the ALJ provided a logical bridge between the medical evidence and her conclusions. Thus, the Court is unpersuaded by the Plaintiff's argument.

### B.     The ALJ Improperly Analyzed the Listed Impairments

The Plaintiff argues that the ALJ failed to perform an adequate step-three analysis. The Court is persuaded by this argument.

Under step three, "[t]he Social Security Administration has promulgated regulations containing listings of physical and mental impairments which, if met, are conclusive on the issue of disability." *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (citations omitted). Thus, a record of the ALJ's application of the Plaintiff's impairments to the Listings is necessary for the Court to engage in a substantial evidence review of whether the ALJ performed a proper step-three analysis. *Id.* at 295 (4th Cir. 2013). Therefore, "[t]he ALJ should have identified the relevant listed impairments. [She] should then have compared each of the listed criteria to the evidence of [the Plaintiff's] symptoms. Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).

In *Radford*, the court found that the ALJ "summarily concluded that [the Plaintiff's] impairment did not meet or equal a listed impairment, but he provided no explanation other than writing that he 'considered, in particular,' a variety of listings, including Listing 1.04A, and noting that state medical examiners had also concluded 'that no listing [was] met or equaled.'" 734 F.3d at 295. The court held that, "[t]his insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Id.*

Here, the ALJ found that the Plaintiff did not meet any of the Listings. The ALJ provided a detailed analysis of how the Listings applied the Plaintiff's mental impairments. R. 15-16. However, as to the Plaintiff's remaining impairments the ALJ simply stated:

> [T]he undersigned has appropriately evaluated medical and other evidence pertaining to the claimant's medically determinable impairments in conjunction with all the relevant severity criteria contained within the 1.00 Musculoskeletal System, 3.00 Respiratory System, 11.00 Neurological, and 12.00 Mental Disorders series of listed impairments.

R. 15. Therefore, similarly to *Radford*, it is impossible for this Court to engage in a substantial evidence review of the ALJ's reasoning.

Furthermore, the Commissioner argues that the Plaintiff bears the burden of proving that there is "ample evidence" to support a finding that the Listings are met. Indeed, "when the record in a given case does not contain ample evidence demonstrating that a certain listing has been met, the ALJ is under no obligation to provide an analysis of that listed impairment in her decision." *Pumphrey v. Comm'r of Soc. Sec.*, No. 3:14-CV-71, 2015 WL 3868354, at *3 (N.D.W. Va. June 23, 2015). Thus, the Commissioner argues, the ALJ had no obligation to explain why the Plaintiff's severe impairments did not meet the Listings because there was not ample evidence.

The Court, however, finds that there is ample evidence to require a discussion of the Plaintiff's impairments and the Listings. Indeed, several of the Plaintiff's severe impairments identified by the ALJ could equal one of the Listings. For example, the ALJ determined that the Plaintiff had a severe impairment of degenerative disc disease of the cervical spine. R. 15. Listing 1.04 deals with disorders of the spine and includes degenerative disc disease. The Court is left wondering why the Plaintiff's degenerative disc disease did not meet Listing 1.04. Therefore, there is ample evidence to warrant a discussion of why the Plaintiff's degenerative disc disease does not meet Listing 1.04. Likewise there is likely ample evidence to warrant a discussion of other Listings.

## VI. RECOMMENDATION

Based on the foregoing, the Court concludes that the ALJ's decision did not comply with the applicable law and regulations. Accordingly, the Court **RECOMMENDS THAT**:

1. Plaintiff's [ECF No. 11] Motion for Judgment on the Pleadings be **GRANTED**; and

2. Commissioner's [ECF No. 13] Motion for Summary Judgment be **DENIED**;

3. The case be **REMANDED** to the agency for further analysis of the step-three inquiry.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: March 14, 2017               */s/ James E. Seibert*
                                   JAMES E. SEIBERT
                                   U.S. MAGISTRATE JUDGE